IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SONYA LONG, <br>     On behalf of K.K.M., a minor <br><br>     Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN,[1] <br> Acting Commissioner of Social Security, <br><br>     Defendant. | Case No. 12-cv-424-TLW |

**OPINION AND ORDER**

Plaintiff Sonya Long, on behalf of K.K.M., a minor child, seeks judicial review of the decision of the Commissioner of the Social Security Administration, denying the minor child's claim for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. # 24). Any appeal of this decision will be directly to the Tenth Circuit. For the reasons that follow, the Court orders that the case be **REVERSED AND REMANDED** for further proceedings.

### Introduction

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 416.912(a). "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A plaintiff is disabled under the Act only if his or her "physical or mental impairment or

---

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750-752 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

The role of the court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence, and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. at 1262. The Court may neither re-weigh the evidence

nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## Sequential Evaluation for Child's Disability Benefits

The procedures for evaluating disability for children are set out at 20 C.F.R. § 416.924(a). The first step is to determine whether the child is performing substantial gainful activity. If not, the next consideration is whether the child has a "severe" mental or physical impairment. A "severe" impairment is one that causes more than minimal functional limitations. If a "severe" impairment is identified, the claim is reviewed to determine whether the child has an impairment that: 1) meets, medically equals, or functionally equals the listings of impairments for children;[2] and 2) meets the duration requirement.

If the child does not have impairments of a severity to meet a listing, the severity of the limitations imposed by impairments are analyzed to determine whether they functionally equal a listing. Six broad areas of functioning, called domains, are considered to assess what a child can and cannot do. Impairments functionally equal a listing when the impairments result in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a. The six domains are: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A limitation is "marked" when it interferes seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation interferes very

---

[2] The listings describe, for each of the major body systems, medical findings which are considered severe enough that they represent impairments which presumptively demonstrate disability. 20 C.F.R. Pt. 404, Subpt. P, App.1.

seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

## Background Information

Plaintiff's mother filed an application for SSI benefits for plaintiff, then a ten-year-old female, on January 15, 2009, alleging a disability onset date of January 1, 2004. (R. 134-36). Plaintiff's application alleged a number of severe impairments, including a learning disability and emotional/mental health issues resulting from sexual abuse. (R. 166). Plaintiff's claims were denied initially and on reconsideration. (R. 93-98, 102-05). Following an ALJ hearing, the ALJ issued a decision finding that plaintiff was not disabled. (R. 47-61). Plaintiff appealed. (Dkt. # 2).

Plaintiff's mother testified that plaintiff was a good student in kindergarten, but that her grades dropped significantly after that. (R. 78-79). Plaintiff was forgetful and easily frustrated and was falling behind, even though her teachers gave her modified assignments. (R. 79). In December 2007, plaintiff's mother discovered that a family friend had sexually abused plaintiff. (R. 87). Plaintiff's mother attributed plaintiff's poor school performance, at least in part, to the abuse. (R. 80, 87-88). Plaintiff's mother also reported behavioral problems. (R. 81-84). Plaintiff often was depressed or angry for no reason. Id. Plaintiff also cried and had nightmares regularly. Id.

Following the discovery of the abuse, plaintiff's mother took plaintiff to Family and Children's Services ("FCS") for counseling. (R. 220-48). Plaintiff only attended two counseling sessions. Id. Plaintiff's mother testified that FCS assigned a different counselor after the first two sessions and that plaintiff did not like the new counselor. (R. 81). (The records, however, indicate that plaintiff's mother's insurance declined coverage after the first two sessions).

Plaintiff did return to counseling at FCS in October 2009. (R. 292-313). At that time, the social worker diagnosed plaintiff with depressive disorder, NOS; sexual abuse of a child, victim; and adjustment disorder with mixed anxiety. Id. Plaintiff was continuing with this therapy on a weekly basis through the date of the ALJ hearing. Id. Plaintiff testified that she got angry when her counselor talked "about the thing that happened to me." (R. 75). Plaintiff's mother testified that plaintiff did not discuss the counseling sessions with her but that plaintiff's counselor reported plaintiff's progress in very general terms. (R. 81). The counselor told plaintiff's mother that plaintiff was beginning to talk about the abuse and that plaintiff used a diary to help work through her anger. Id. The treatment notes indicate that plaintiff needed to work through a number of losses in addition to the abuse, but her prognosis was good. (R. 292-313).

Plaintiff underwent academic testing in January 2008. (R. 137-57). At that time, plaintiff's teacher noted that plaintiff worked slowly and was easily frustrated. Id. Plaintiff's IQ was 76, which placed her in the low average to borderline range. Id. Plaintiff did test below grade level in a number of areas, but the gap between her "intellectual ability and academic achievement" was not significant enough to diagnose her with a developmental delay or learning disability. (R. 141). Plaintiff was tested a second time in April 2009 with similar results. (R. 261-62).

## The ALJ's Decision

The ALJ found that plaintiff had severe impairments of depressive disorder; history of sexual abuse of child, victim; and adjustment disorder with mixed anxiety. (R. 52). The ALJ summarized the testimony that plaintiff and her mother gave during the ALJ hearing, as well as the records from FCS. (R. 52-55).

The ALJ determined that plaintiff did not meet a listing. (R. 53). She also determined, by reviewing the six areas of functioning applicable to a child's SSI application, that plaintiff's impairments did not equal a listing. (R. 53-55). In the area of acquiring and using information, plaintiff had "less than marked limitation" based upon the intellectual testing given in March 2008. (R. 56). In the area of attending and completing tasks, plaintiff had "less than marked limitation." (R. 56-57). The ALJ relied on plaintiff's teacher's comments regarding plaintiff's ability to complete assignments. (R. 57). Plaintiff had no limitation in the four remaining areas (interacting and relating with others; moving about and manipulating objects; caring for yourself; and health and physical well-being). (R. 57-61). To equal a listing, plaintiff had to have marked or extreme limitations in two or more areas. Because she did not, the ALJ found plaintiff not disabled.

## Analysis

On appeal, plaintiff raises three issues: 1) that the ALJ failed to do a credibility assessment of the testimony; 2) that the ALJ failed to include plaintiff's "borderline" IQ as a severe impairment and to find that plaintiff met Listing 12.04;[3] and 3) that the ALJ erred in finding that plaintiff did not meet the functional equivalent of the listing based on plaintiff's grades/test scores, poor memory, and behavioral issues. (Dkt. # 15). Plaintiff's step two and three arguments – that the ALJ failed to include plaintiff's borderline IQ as a severe impairment and to find that plaintiff met a listing – are without merit. Plaintiff's credibility argument, however, has merit.

The applicable regulations, 20 C.F.R. §§ 416.924 and 416.929 discuss the process used to determine disability in children. Section 416.929 specifically states that the Commissioner "will

---

[3] In the response brief, the Commissioner pointed out that the proper listing was not 12.04, but 112.04. (Dkt. # 16). Plaintiff acknowledged the error in the reply brief but argued, without any proper analysis, that the ALJ's finding was still not reasonable. (Dkt. # 17).

6

consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled." The use of the word "will," while not as strong as the word "shall," indicates that the credibility analysis is necessary to the process of determining disability. Likewise, SSR 96-7p provides that

> the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

SSR96-7p. This ruling states that the ALJ is required to evaluate the claimant's testimony.[4]

Finally, in an unpublished opinion, the Tenth Circuit Court of Appeals reversed an ALJ's decision in a child disability case because the ALJ did not make a credibility determination regarding the parent's testimony. See Smith ex rel E.S.D. v. Barnhart, 157 Fed.Appx. 57, 61 (10th Cir. 2005) (unpublished) (relying on Briggs ex rel Briggs v. Massanari, 248 F.3d 1235 (10th Cir. 2001). The Court explicitly rejected the Commissioner's decision that a credibility analysis was not required, even though the parent's testimony was consistent with the record. See id. at 61. The Court stated that

> E.S.D.'s established borderline intellectual functioning and learning disability, which the ALJ found to be severe, could reasonably be expected to produce the limitations on her functioning that Smith described. Therefore, the ALJ was required to consider the effect of those symptoms on E.S.D.'s functioning, which in turn required a credibility finding.

Id. Accordingly, a credibility analysis is required.

The Court also has considered the Commissioner's argument, made during a hearing held on November 14, 2013, that the Court could find harmless error pursuant to Keyes-Zachary v.

---

[4] In applications involving children, the parent may be the person whose testimony must be evaluated. See 20 C.F.R. § 416.928(a).

Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012) because the Court could "follow the adjudicator's reasoning." However, in addition to an ability to "follow the adjudicator's reasoning," Keyes-Zachary also requires a determination that "correct legal standards have been applied." Id. The ALJ failed to conduct *any* credibility analysis; therefore, the correct legal standards have not been applied, and the Court must reverse and remand for further proceedings.

## Conclusion

For these reasons, the decision of the Commissioner finding plaintiff not disabled is **REVERSED AND REMANDED** for further proceedings. On remand, the ALJ shall make credibility findings.

SO ORDERED this 15th day of November, 2013.

_____
T. Lane Wilson
United States Magistrate Judge